**BOLLINGER AND BOYD BARGE SERVICE, INC., Plaintiff-Appellant,**

**Wallo Boat Services, Intervenor,**

v.

**The MOTOR VESSEL, CAPTAIN CLAUDE BASS, its engines, apparel, tackle, etc., in rem, et al., Defendants-Appellees.**

No. 76–4478.

United States Court of Appeals, Fifth Circuit.

July 12, 1978.

W. E. Noel, New Orleans, La., for Raymond J. Ullo & Wallo Marine Towing and Wallo Boat Service, Inc.

Before TUTTLE, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

This is an admiralty action for foreclosure of a preferred ship's mortgage under the Ship Mortgage Act, 46 U.S.C. §§ 951 *et seq.* Plaintiff, Bollinger and Boyd Barge Service, Inc., named as defendants, the motor vessel "Captain Claude Bass", *in rem*, and Wallo Marine Towing Co., Inc., Raymond J. Ullo, and Patrick H. Watts,[1] *in personam.*

In July, 1974, the plaintiff sold the motor vessel "Captain Claude Bass" to Wallo for $150,000 which included a preferred mortgage for $145,000. The note secured by the mortgage was signed by Wallo and endorsed by Ullo. The vessel was thereafter sold to Claude Bass on November 19, 1974, with Bass assuming the mortgage. Payments on the mortgage note stopped some months later and at that time $94,000.00 was the balance due, with interest at the rate of twelve percent (12%).[2]

In the district court plaintiffs moved for an entry of default against the vessel *in rem*, notice was given to all defendants and on March 18, 1976, default judgment was entered ordering the sale of the vessel "Captain Claude Bass" by the United States Marshal. 46 U.S.C. § 951. Because there was no question surrounding the balance due and payable on the mortgage note of $94,000, the Court allowed the plaintiff-mortgagee to bid any portion of that sum for the vessel. On April 27, 1976, the motor vessel was sold to the plaintiff for $100.00

Stanwood R. Duval, Jr., Houma, La., for plaintiff-appellant.

---

1. Suit against Watts was dismissed upon showing the court this indebtedness was discharged in a bankruptcy proceeding.

2. The terms of the mortgage also provide for an award of attorney's fees at the rate of twenty percent (20%) of the amount due in principal and interest in the event of default upon the mortgage.

and the Court without objections confirmed the sale.

Plaintiffs then proceeded with its *in personam* suit against Wallo and Ullo for the balance due on the note. Following the pretrial conference, the court instructed the parties to file motions for summary judgment. On November 19, 1976, the court granted defendants' motion for summary judgment and denied any deficiency against the individuals. Plaintiff appeals. We reverse and remand for trial in accordance with this opinion.

Plaintiff, in his appeal, relies upon the holding in *J. Ray McDermott & Co., Inc. v. Vessel Morning Star*, 457 F.2d 815 (5th Cir. 1972), and equitable principles for the proposition that it is entitled to the entire amount due on the mortgage note less $100.00 credit to defendants for the amount bid for the vessel.

In *McDermott*, this Court en banc was faced with the question of whether state or federal law governs deficiency judgments under the Ship Mortgage Act. The en banc Court held that even though state law may occasionally be used to fill in gaps in federal maritime law, there were no such gaps in the Ship Mortgage Act when it is "read together with the statutes delineating the judicial sale procedure . . . ." *J. Ray McDermott & Co., Inc. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972).

Specifically, *McDermott* held:

46 U.S.C.A. § 951 provides that a mortgagee may enforce his lien by a suit *in rem* in admiralty. Original jurisdiction is granted exclusively to the district courts. Section 954(a) permits the mortgagee to bring suit *in personam* against the mortgagor in admiralty for any deficiency in the amount of the indebtedness secured by the vessel. Fed.R.Civ.P. E(9)(b) provides that a judicial sale may be held prior to the completion of the foreclosure action. 28 U.S.C.A. § 2004 directs that any personalty sold under order of a court must be sold in accordance with Section 2001. The latter section provides for both private and public sales and defines the prerequisites necessary for their validity. Section 2001(b) requires, *inter alia*, that the court appoint three disinterested persons to appraise the property before it can confirm a *private* sale. There is no appraisal requirement under Section 2001(a) for a *public* sale.

*McDermott* stated clearly that federal law would apply in actions under the Ship Mortgage Act and briefly touched on the district court's discretion with respect to confirmation of judicial sales. However, a careful reading of *McDermott* indicates the en banc Court did not reach the specifics of the law governing the deficiency decree action itself. Therefore, we find it necessary to decide what the district court must determine in its consideration of a deficiency action.

First, we find that the trial court erred in granting summary judgment for the defendants. In so doing, the trial court has, in effect, held without evidentiary proof that the fair market value of the motor vessel was $94,000 and because plaintiff now has the vessel it is entitled to no more.

But granting plaintiff's motion for summary judgment would have been equally erroneous. Such a holding would have in effect been a finding that the fair market value of the vessel was the shockingly low $100.00 bid by the plaintiff and would have given plaintiff the vessel plus the deficiency amount of $93,900.

Both of these findings are contrary to equitable considerations upon which admiralty courts rely.

Over a century ago this high calling was vividly described by Justice Story. 'A court of admiralty is, as to all matters falling within its jurisdiction, a court of equity. Its hands are not tied up by the rigid and technical rules of the common law, but it administers justice upon the large and liberal principles of courts which exercise a general equity jurisdiction.' The David Pratt F. Case No. 3597 (D.C.Maine 1839). And as we have more recently expressed it, 'The Chancellor is no longer fixed to the woolsack. He may stride the quarter deck on maritime juris-

prudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels.' (Footnote omitted) *Cates v. United States*, 451 F.2d 411, 414 (5th Cir. 1971).

■ The denial of any deficiency judgment allegedly based upon equitable considerations was itself contrary to sound equitable principles. There is no evidence in the record which shows the true fair market value of the motor vessel. This total void as to value makes it clear that the denial to the plaintiff of any deficiency award based on "equitable considerations" had no factual basis at all. However, a granting of plaintiff's claim in toto would be equally inequitable for the same reason.

In an analogous situation, *United States v. Wells*, 403 F.2d 596 (5th Cir. 1968), concerning foreclosures of home loans under the national loan program of the Veteran's Administration, the district court denied a deficiency judgment for the United States based upon the equitable consideration standard under Florida law. This Court reversed, holding that even though the Florida standard of "sound judicial discretion" did not apply, and federal law did, which might or might not be the same standard, there was no factual basis in the record for denying the deficiency judgments.

■ In this case, the individual defendants are liable for all sums unpaid, plus interest and attorneys fees, under the original ship's mortgage. This figure can only be calculated by establishing the difference between the total outstanding obligation and the "fair value" of the vessel involved. This determination must be made in accordance with principles of equity. Such principles would not allow "windfalls" in either direction. It is no answer to say that technically the sale was held and confirmed according to law because no one contested those proceedings. Equity attempts to do justice to all parties.

We, therefore, reverse and remand to the district court for a full trial from which the court must determine the true fair market value of the "Captain Claude Bass" at the time plaintiff purchased it at the public sale. This finding must be made because defendants are liable *in personam* for that portion of the primary obligation still outstanding and not satisfied when the plaintiff purchased the vessel at the Marshal's sale and are responsible for that specific difference only.

REVERSED AND REMANDED with instructions.